UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SHEERAZ B. KHAN, | ) No. CV 09-08951-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

        determined that Plaintiff could perform alternative work activity.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

**I**

**THE ALJ ERRED AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS BY FAILING TO INQUIRE INTO DEVIATIONS BETWEEN THE VOCATIONAL EXPERT'S TESTIMONY AND THE REQUIREMENTS OF THE DICTIONARY OF OCCUPATIONAL TITLES**

In his decision, the ALJ determined that Plaintiff has the following residual functional capacity: lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk one-half hour at a time for a total of four hours in an eight-hour workday secondary to mild anemia, sit six hours in an eight-hour workday and occasional kneel, crouch and crawl. (AR 25.)

At the hearing which the ALJ conducted on July 24, 2007 (AR 36-49), a Vocational Expert ("VE") testified. The hypothetical included exertional limitations which were identical to the residual functional capacity ("RFC") as found in the ALJ's decision. (See AR at 45-46.)[1]

After posing the aforesaid hypothetical, the VE was asked what work such an individual could do, in the absence of any past relevant work, and the following testimony ensued:

---

[1] Although the hypothetical also included non-exertional limitations, they are not an issue in this litigation.

2

1  "Q  Okay.
2  A.  And no prior training or experience required.  And since we
3      have a person who is limited to a sit/stand option, I will
4      give you some examples of jobs, and the jobs have been
5      eroded by approximately 59 percent for the sit/stand
6      accommodation.  For example, there's various types of bench
7      packaging work such as a handkerchief folder, 920.687-098.
8      This is light work, SVP 2.  And on an eroded basis I would
9      estimate about 7,000 jobs in the local economy and in the
10     nation, in excess of 100,000 jobs.  There's various types in
11     inspecting work, such as inspector, 727.687-062.  This is
12     also light work, SVP 2, and again on an eroded basis, about
13     3,000 jobs in the local economy and about 70,000 jobs in the
14     nation.  There will be various types of assembly work such
15     as a production assembler, 706.687-010.  This is also light
16     work, SVP 2.  And again on a [sic] eroded basis, about 7,000
17     jobs in the local economy and in the nation 180,000 jobs."
18 (AR 46-47.)

As assessed by Plaintiff, the error in this case inheres in the unexplained deviation between the Dictionary of Occupational Titles ("DOT") requirements of the identified jobs, and the VE's testimony that Plaintiff could perform these jobs pursuant to a 50 percent "erosion."  Plaintiff's argument is summed up by his contention that, "The ALJ abdicated the responsibility to appropriately inquire into the vocational expert's purposeful use of the term "accommodate." (JS at 7.)  Plaintiff argues that there is a conflict and deviation between the DOT and the testimony of the VE, and that the ALJ did not

solicit a sufficient explanation to allow for such deviation. (JS at 8.) Plaintiff argues that the DOT is the "primary" source on which the Commissioner and ALJs rely and is part of the record for review in Social Security cases. (See JS at 8, citing SSR 00-4.) Focusing on SSR 00-4p, Plaintiff notes that it specifically provides that "when a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about possible conflict between that VE of VS evidence and information provided in the DOT." Plaintiff notes that Social Security Regulations mandate that Social Security Rulings are binding precedent. (See 20 C.F.R. §402.35(b)(1).)

In response, the Commissioner contends that an ALJ may rely upon vocational testimony that contradicts the DOT "as long as the record contains persuasive evidence to support the deviation." (JS at 12.) The Commissioner argues that the VE simply "identif[ied] a subset, or reduced number of jobs within an occupation that an individual with Plaintiff's particular limitations could perform." (JS at 14.)

The Commissioner cites Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) in support of his argument that a record which contains "persuasive evidence" to support the deviation may form the basis for an ALJ relying on such expert VE testimony. But the Commissioner reads too much into Johnson, and indeed, a closer reading of the facts and the holding of the case leads to a conclusion that Johnson lends more support to Plaintiff's position in this case. In Johnson, as the opinion notes, the ALJ directed the VE to assume that the claimant was restricted to sedentary work and had a number of non-exertional limitations. In response, the VE testified that the individual could not perform her former job but could work in certain identified jobs

4

classified as "light" work, considered a more strenuous category than "sedentary." Plaintiff in that case asserted that there was error because the ALJ had asked the VE to assume that she was limited to sedentary work. (Id. at 1431, fn. 1.) Citing Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990), the Court in Johnson indicated that although "Terry supports the proposition that although the DOT raises a presumption as to the job classification, it is rebuttable." (Id. at 1435.) The Court thus held that the ALJ may rely upon such expert testimony which is in contradiction with the DOT "but only insofar as the record contains persuasive evidence to support the deviation." (Id.) The Court found there was such persuasive testimony because there was evidence of available job categories in the local rather than the national market, and there was testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant. (Id.) In a footnote, the Court noted that "in this case, the ALJ's explanation is satisfactory because the ALJ made findings of fact that supported deviation from the DOT." (Id., fn. 7.)

In Johnson, the Court also noted that the DOT is not the only source of admissible information concerning jobs, but that the Commissioner can take administrative notice of any reliable job information including the services of a VE. (Id. at 1435, citing Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994), Whitehouse v. Sullivan, 949 F.2d 1005, 1007 (8th Cir. 1991).)

Perhaps relying upon this later language in the Johnson opinion, the Commissioner here argues that the VE simply identified a "subset, or reduced number of jobs within an occupation" that somebody with Plaintiff's "particular limitations" could perform. (JS at 14.)

1  Essentially, this boils down to an argument that the ALJ could simply
2  accept the testimony of the VE as an expert, or in the alternative,
3  that simply by acknowledging the exertional limitations posed by the
4  ALJ in the hypothetical, and identifying a reduced number of jobs that
5  Plaintiff could perform, that in itself constituted a sufficient
6  explanation for any deviation between the VE's testimony and the DOT.
7  (See JS at 15-16.)

8  The problem with the Commissioner's argument is that it is
9  foreclosed by the Ninth Circuit's later decision in Massachi v.
10 Astrue, 486 F.3d 1149 (9th Cir. 2007), cited by both sides in this
11 case.  The Circuit, perhaps acknowledging the possible ambiguity in
12 the above portion of the Johnson opinion, noted the following:

13        "For the first time, we address the question whether,
14     in light of the requirements of SSR 00-4p, an ALJ may rely
15     on a vocational expert's testimony regarding the
16     requirements of a particular job without first inquiring
17     whether the testimony conflicts with the *Dictionary of*
18     *Occupational Titles*.  We hold than an ALJ may not."
19 (46 F.3d at 1152.)

20

21    In Massachi, the Court noted that Johnson had been decided prior
22 to the enactment of SSR 00-4p, but that nevertheless, Johnson had
23 instructed that an ALJ could rely upon exert testimony contradicting
24 the DOT only under circumstances in which persuasive evidence to
25 support the deviation had been demonstrated. (See Massachi, 486 F.3d
26 at 1153.)  But, as Massachi made clear, SSR 00-4p provides unambiguous
27 guidance which requires the adjudicator to discharge an affirmative
28 responsibility to ask about any possible conflict between VE evidence

and information provided in the DOT. (Id. at 1152.)  As Massachi noted, these procedural requirements "ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." (Id. at 1153.)

It is clear to this Court that Massachi clarified any possible ambiguity in Johnson, by requiring strict adherence to the requirements of SSR -04p.  Thus, if there is a deviation (and both parties here agree that there is), there must exist persuasive evidence in the record itself, which may be evidenced by the ALJ inquiring into the VE's reasons for identifying jobs in which there is a deviation between a claimant's exertional abilities, as set forth in the hypothetical question, and the jobs actually identified.  The Commissioner attempts to bypass this obligation by arguing that the VE simply identified a subset or reduced number of jobs within an occupation that somebody with Plaintiff's particular limitations could perform. (JS at 14.)  But therein lies the problem, because the VE provided no explanation as to why that subset or reduced number of jobs was in fact identified by him.  To accept the VE's testimony without more would be simply to accept the proposition that because the VE is an expert, his reduction, or accommodation, of 50 percent must be correct.  To the contrary, whether it was correct or not was the responsibility of the ALJ, based upon inquiry, to determine, which simply did not occur here.

The Commissioner's final argument is that if there is any error, it is harmless. (JS at 15.)  In making this argument, however, the Commissioner engages in circular reasoning, arguing that the VE provided sufficient support for his conclusion about possible

7

1  conflicts by identifying a subset of occupations that could be
2  performed by someone exertionally limited as the hypothetical posited.
3  As the Court has indicated, the question is why such a subset was
4  identified, not the simple fact that it was identified. Plaintiff's
5  Reply to the Commissioner's argument succinctly makes this point. (See
6  JS at 16.) The Court cannot disagree with Plaintiff's
7  characterization of the VE's testimony as an "unexplained rationale."
8  (See, Id.) It is clear, based on the foregoing, that this matter must
9  be remanded for new hearing in a manner consistent with this decision.
10      For the foregoing reasons, this matter will be remanded for
11 further hearing consistent with this Memorandum Opinion.
12      **IT IS SO ORDERED.**

14 DATED: November 23, 2010                    /s/
                                        VICTOR B. KENTON
15                                      UNITED STATES MAGISTRATE JUDGE